## Davis v. Pendleton.

(Decided Feb. 16, 1934.)

EVERSOLE & EVERSOLE for appellant.

J. E. JOHNSON, Jr., and R. B. ROBERTS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is a contest case involving title to the office of councilman for ward No. 1, precinct No. 34, of the city of Hazard, Perry county, Ky.

Hazard is a city of the fourth class, its municipal legislature being composed of six councilmen, elected by the qualified voters of its six wards for which they respectively stand.

At the general election held on November 7, 1933,

the appellant, Joe Davis, and the appellee, Arch Pendleton, were rival candidates for the office of councilman for ward No. 1, precinct No. 34, of Hazard, Ky., for the ensuing term.

The election returns were canvassed by the county board of election commissioners, and it was thereby shown that the appellant had received 39 votes and the appellee 150 votes, and the certificate of election to the office of councilman of ward No. 1, so certifying, was issued by the election commissioners to appellee.

Thereupon this action was instituted by appellant to contest the election, wherein he averred that he had filed his petition nominating him as the candidate for this office upon the Independent ticket and under the device of "his own picture"; that he was the only candidate for councilman for his ward, whose name was legally printed upon the official municipal ballots to be voted for the office of councilman for that ward; that at the said election he received 39 legal votes, which constituted a majority and were, he averred, all the legal votes cast for councilman for ward No. 1; but that, notwithstanding this, the election commissioners had certified that the contestee, Arch Pendleton, had received 150 votes, or a majority of 111 votes, and had issued Pendleton, the appellee, the certificate of election. Further, the appellant charged that the contestee had violated the provisions of the Corrupt Practice Act in the election and specifically set out other grounds which he alleged invalidated the votes cast for appellee.

It appears by the record that the appellee had received the Republican nomination for councilman of this ward, but that he had neglected to file same with the county court clerk in time to allow his name to be printed upon the official ballots as the Republican nominee and candidate at the general election for that office.

Further pleadings made up the issues, when, the cause coming on to be heard, the appellee at the conclusion of contestant's evidence moved that his petition be dismissed and for a judgment awarding him (the contestee) the certificate of election; whereupon the court adjudged that contestant's petition be dismissed and, further, that the appellee, Arch Pendleton, be awarded the certificate of election to the office of city councilman of ward No. 1 of the city of Hazard, as was

awarded him by the county board of election commissioners.

From this judgment the appellant prosecutes this appeal, assigning numerous grounds of error, alleged committed by the trial court, for reversal of its judgment. We, however, deem it unnecessary to here consider and dispose of these contentions, as in our opinion the appeal should be dismissed upon the basic ground that the lower court was without jurisdiction to entertain and decide this contest action.

As shown by the record, appellant here sought election to the office of councilman of the city of Hazard, which is by section 2740, Kentucky Statutes, declared to be a municipality of the fourth class. By section 3484 of the charter of cities of the fourth class, it is provided that "the legislative power [of such municipality] shall be vested in a mayor, and not less than six nor more than twelve councilmen, as may be provided by ordinance." Further, by section 3486, Kentucky Statutes, it is provided that "the mayor shall be chairman of the board"; that "a quorum shall consist of a majority of the board or of one-half of the members of the board and the mayor"; that "a quorum is invested with power to act" and "in case of a vacancy in the board by death, resignation or any other cause, such vacancy shall be filled as hereinafter provided"; and that "it [the board] shall judge of the eligibility and election returns of its members, adopt rules for its proceedings and government; * * * and three-fourths of the members voting affirmatively may, for any good cause, expel any member."

Further, it is provided in part by section 1596a-5, Kentucky Statutes, that:

"For offices not within such gift they [the county board of election commissioners] shall give duplicate or more written certificates over their signatures, of the number of votes given in the county, city, town, district, or precinct, particularizing therein the precinct at which the votes were given, one copy to be retained in the clerk's office, one delivered to the sheriff, and one, in case of municipal or district election, to the common council of said municipality or governing authority of such district."

By this statutory provision, it is apparent that the only duty imposed upon the county board of election commissioners, in cases of municipal offices, is to count the ballots and to certify the vote on the face of the returns to the common council of such municipality. Martin v. Eagle, 236 Ky. 267, 32 S. W. (2d) 1020; Whitaker v. Reynolds et al., 234 Ky. 127, 27 S. W. (2d) 672. It is not authorized in such cases to issue the certificate of election, nor has it any right to determine whether or not a name legally appears on the ballots. Cheatham v. Williams, 212 Ky. 73, 278 S. W. 139.

The county board of election commissioners certifies to the board of councilmen the vote received by a candidate for the office of councilman, and the board is given the exclusive authority to adjudge and determine the eligibility and election of said candidate to membership upon the board, in case the candidate's election thereto is contested, by section 3486 of the charter of towns of the fourth class, which provides that ''it [the board] shall judge of the eligibility and election returns of its members.'' In the case of Stack v. Commonwealth, 118 Ky. 481, 81 S. W. 917, 26 Ky. Law Rep. 343, it was held that the statute did not apply to the board in office at the time the election was held nor did it vest such outgoing board with any power or authority to determine contests as to who had been elected to membership in the board for the succeeding term—that is, that no legislative board in office at the time of the holding of the election had the right to try the title of those elected to positions on the succeeding board. Further has it been held by this court that section 3486 of the Statutes, applicable to cities of the fourth class, as well as the similar provisions of charters of cities of different classes, does not apply or vest such contest jurisdiction in the board, where the contest involves the title of so many members of the board of councilmen or aldermen as leaves its uncontested membership less than is required to make a quorum; in such case, the contest must be instituted in the circuit court. Especially could it not act as judge of the contest where the election of all of its members was involved in contest, as was the situation in the case of Orr, etc., v. Kevil, etc., 124 Ky. 720, 100 S. W. 314, 317, 30 Ky. Law Rep. 761, 946, where all the councilmen, claiming title or election to the offices under certificates of election issued them by the county board of election commissioners, contended that, as such,

the right was given them by section 3486, supra, to sit in judgment upon the merit of their own title to election. In answering this contention and denying their possession of such right, the court said:

"It never was the law that one could be a judge of his own case. At common law all such judgments were void, as they must be held under every rational system of judicature or governmental policy. No statute should be construed to mean what would be absurd, and what could be more absurd than the submission to a board of councilmen of the question whether they, or their opponents, had been legally elected?"

The facts found in the instant case, however, do not bring it within any of the exceptions to the statutory provision that the board of councilmen is the exclusive judge of the election of its members, as here no question is presented as to the due and lawful election of the other members of the council or the mayor, there being involved in this contest suit only the title of appellant to membership upon the board. Therefore the provision of section 3486, that if other members of a newly elected board hold uncontested title to the office and comprise a quorum, they are the sole judges of the eligibility and election of its members, is here applicable and controlling.

To such effect was the rule declared in the case of Kluemper v. Zimmer, 240 Ky. 225, 41 S. W. (2d) 1111, where the court, in there considering the question as to whether the board of commissioners of a second-class city, operating under the commission form of government, had the like power, as was given its board of councilmen or aldermen under section 3043 of its charter (substantially the same as section 3486 involved), to act as judge of the election of its members, held that such right was not given the commissioners, in that the statute, section 3235c-12, in defining the powers of the board of commissioners, makes no reference to its having the authority to determine the election and qualification of its members, which power is, on the other hand, expressly given by section 3043 to the board of councilmen, and that the provision affected the internal organization and government of the councilmanic and aldermanic boards and did not constitute a law to govern the city. The court in the course of its opinion

in discussing and emphasizing this distinction found in the statutes between the powers given the two boards in this respect says that section 3043 of the charters of cities of the second class, which, as stated, is substantially the same as section 3486 of the charters of cities of the fourth class, gives the city council of such cities the right to exclusively judge and determine the eligibility and election of its members, where the contest does not involve the title of so many members of the board as to destroy or prevent its having an acting quorum.

Under the rationale of these decisions and the applicable rules declared therein, which we deem controlling of the question of jurisdiction presented in the instant case, we conclude that the right to hear and decide appellant's contest of appellee's election to the office of councilman for Ward No. 1 of the city of Hazard was given exclusively to its board of councilmen and that the same did not come within the stated exceptions to the rule, wherein jurisdiction thereof is adjudged, by the cited cases, to the circuit court. Therefore we conclude that the action of the trial court in dismissing appellant's petition was proper, regardless of the ground upon which his ruling was made, in that the court was without jurisdiction to hear and decide this election contest for the office of councilman; and, for the like reason, we further conclude that the court erred in also adjudging that the appellee should be awarded the certificate of election as city councilman, which the county board of election commissioners had awarded him, in that both the election commissioners were without the authority to award appellee the certificate of election or the court to determine the merits of the contest.

Therefore, for the reasons stated, we are of the opinion that the judgment should be reversed, with direction to the lower court to dismiss the contestant's petition for lack of jurisdiction.